Steward HOPSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 37987.

Missouri Court of Appeals, Western District.

Feb. 24, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1987.

Application to Transfer Denied May 19, 1987.

Sean O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

Defendant in 1971 pleaded guilty to a charge of forcible rape and was sentenced to life imprisonment. (At that time, the death penalty was authorized for forcible rape. § 559.260, RSMo 1969 (repealed 1975)). He has filed a Rule 27.26 motion for relief based on the ground of his retained counsel's conflict of interest in that he also represented a codefendant, one Mitchell Mack.

Representation of multiple defendants is not per se a violation of Sixth Amendment guarantees of effective assistance of counsel. *Holloway v. Arkansas,* 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978); *Lowery v. State,* 650 S.W.2d 692, 694 (Mo.App.1983). In cases where defendant makes no objection to the multiple representation at or before trial, as was the case here, the defendant, to establish ineffective assistance of counsel, "[f]irst, ... carries the burden of showing that representation of multiple defendants constituted an *actual conflict of interest.* Second, if an *actual conflict of interest* is shown a complaining defendant must go a step further and carry the burden of showing that the conflict of interest *adversely affected* counsel's performance in his representation of defendant." *State v. Murphy,* 693 S.W.2d 255, 261 (Mo.App. 1985).

Defendant was alleged to have been one of four men, including Mitchell Mack, who, along with one woman, participated in the abduction, rape and shooting of a certain female victim. The four men actually perpetrated the rape. The victim, though shot twice—and by one account, three times—did not die.

Defendant's parents retained lawyer Bruce Simon because he was representing Mitchell Mack. Hopson and Mack were both 18 years of age.

On January 26, 1971, codefendant Mitchell Mack pleaded guilty to the rape charge. On that same date Hopson offered to plead guilty, but in recounting the circumstances of the crime at his guilty plea hearing, he said that one of the other men had forced

him at gunpoint to rape the victim. The court therefore rejected his guilty plea. Defendant had never before this time, according to attorney Simon's testimony on the 27.26 hearing, made any claim of duress to him.

On March 3, 1971, Hopson, still represented by Simon, once again appeared before the court and offered to plead guilty. He recanted his earlier claim of coercion. The guilty plea was accepted and he was sentenced to life imprisonment.

Hopson undertakes to demonstrate the conflict inherent in Simon's representing both himself and codefendant Mitchell Mack. He suggests in his brief "at the risk of speculation" that, had Hopson proceeded to trial and asserted his duress defense, he "could have been a witness against Mack, and others, especially regarding the duress matter. Mack might have been a witness to counter [Hopson's] claim of duress".

This is entirely speculative and theoretical. The evidence does not point to any respect in which Mack's and Hopson's respective positions were in conflict. We have read the guilty plea proceedings for both. Hopson did not say then, and did not say on the 27.26 motion hearing, that Mack played any part in his coercion to rape the victim. It was Clarence Evans, one of the four, the only one who had a gun, who forced him to subject the witness to intercourse. Hopson said at the guilty plea hearing that Mack also was forced by Evans to rape the woman. Mack's guilty plea hearing account of the crime was substantially in agreement with Hopson's, except that Mack did not say that he or Hopson was forced to commit the rape. Describing how he and Hopson had gone into the room in a vacant apartment building where the victim was a prisoner and had found Evans in the act of raping her, he said—of his own and Hopson's raping her—"then me and Hopson, you know—it just happened." He said that earlier, as Elroy Bergen (another of the four) was raping the woman, he and Hopson, "We tried to leave, and we couldn't, you know ..." He did not go ahead to explain why he and Hopson were not able to leave. At the time of his and Hopson's rape of the woman, Mack said, the other men and their female accomplice, were in the room and that Evans had a gun in his hand.

One might hypothesize a situation in which the positions of Hopson and Mack would be opposed to each other, and that representation of the one would prevent a lawyer's doing justice to the other. But from the words from these two defendants' own mouths, there was no such conflict. Their accounts of the circumstances of the crime, as noted, were in substantial agreement. If either had been attempting to exculpate himself by incriminating the other, or if there had been some prospect of favorable treatment for one in return for his testimony against the other, or some such circumstance, then a lawyer would be in an impossible situation in representing both of them. But nothing of that sort appears here. Hopson has failed to show an actual conflict of interest on lawyer Simon's part which adversely affected his performance in representing him.

We are unable to find that the trial court was clearly wrong in denying defendant's Rule 27.26 motion. Rule 27.26(j).

The judgment is affirmed.

All concur.